UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGNIESZKA BOESEN, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>RONALD BROWN, DDS, MS, *et al.*,<br><br>  Defendants. | Civil Action No. 1:19-cv-03499-EGS |

**PLAINTIFFS' RESPONSES TO DEFENDANT'S RONALD S. BROWN, DDS, MS
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

| Defendant's Statement of Fact | Plaintiffs' Response Thereto |
|---|---|
| 1. On May 19, 2017, Dr. Mydlarz saw Ms. Boesen for a consultation for "evaluation of left lateral tongue mass."<br><br>Ex. G Mydlarz Consultation Report p. BBSCJ 000425. | **Not Disputed** |
| 2. Dr. Mydlarz's assessment in his May 19, 2017 consultation report was : "Patient is a 44 y.o. female with left lateral tongue lesion, clinical stage I T1 N0 Mx invasive squamous cell carcinoma arising from likely chronic inflammation."<br><br>Ex. H Mydlarz Consultation Report p. BBSCJ 000430. | **Not Disputed** |
| 3. Dr. Mydlarz testified in answer to the question; "So it goes from just a benign lichenoid inflammatory lesion and then you said flips, somehow changes into a --?" "Yes.  It's just chronic -- it's just chronic inflammation. So you are basically asking the body  to heal over and over and over again. At some point it flips a switch and gets an  error or something. There's also probably a genetic predisposition there as well that then turns into a cancer or precancer.  Yeah." | **Objection: As an initial matter, Plaintiffs object to this statement of material fact as the recited testimony is not a statement of fact but rather a statement of opinion offered by Dr. Mydlarz. Plaintiffs further object as the testimony cited is incomplete as it is made clear at page 65:10 – 13 that Dr. Mydlarz was discussing only "30 percent of lichenoid [lesioins]." Defendants failure to cite to the entirety of the testimony is misrepresentative of the** |

24

| | |
|---|---|
| Mydlarz Dep. Tr. at 65: 17-22; 66: 1-5. | **opinion offered by Dr. Mydlarz and is not a statement of fact as represented. (Defendant's Exhibit I at p. 65).** |
| 4. When asked the question at his deposition "It didn't look like in anywhere in your notes or anything you rendered any opinion as far as treating her as to when the cancer specifically formed or how fast it grew or anything like that, but I want to make sure I didn't miss --?" Dr. Mydlarz answered: "Yeah. No. I think it's hard to -- yeah. Without knowing, you know, how things look beforehand it's hard to tell. But the only thing I -- what I mentioned was what I thought is -- not what I thought but what most people would say makes sense is that when you have these sort of inflammatory conditions they can -- they can definitely flip to a cancer, precancer, so they need to be watched very carefully and sort of biopsied as needed. So if things are changing, not getting better, these are the patients that you have unfortunately. I have some patients that have these conditions that we don't have much to offer except for observation for now. So, yeah. But, yeah, it's hard -- it's hard to tell how long it was there. She had you symptoms for a while but that doesn't -- you know, you can't really tell.<br><br>Mydlarz Dep. Tr. at 63:18-22; 64:2-20. | **Objection:** Plaintiffs object to this statement of material fact as the recited testimony is not a statement of fact but rather a statement of opinion offered by Dr. Mydlarz. |
| 5. On May 30, 2017 Dr. Mydlarz performed a partial glossectomy to remove the lesion on Ms. Boese tongue.<br><br>Mydlarz Dep. Tr. at 30: 8-18. | **Not disputed.** |
| 6. When asked at his deposition, "And at that point in time, as of May 30th, 2017, you did not perform a neck dissection?" Dr. Mydlarz answered,; "No. That was done -- that was done later based on -- and that was because based on the pathology and the depth of invasion being more than 3 to 4 millimeters, that's when we started doing elective neck dissection."<br><br>Mydlarz Dep. Tr. at 31: 4-11. | **Not disputed.** |

25

| | |
|---|---|
| 7. Dr. Mydlarz testified that the depth of invasion of the tumor was 5.7.<br><br>Mydlarz Dep. Tr. at 26: 2-3. | **Not disputed.** |
| 8. Dr. Myladlarz explained findings from the glossectomy and testified the tumor was "Still -- still early stage, yeah.  It's  just -- but it was more agree- -- you know, the reason why the stage -- I guess the clinical pathological staging change is that we realized that the -- especially for these tumors, the depth of the invasion is oftentimes more important than the  size -- the size of the tumor.  So -- and -- and depth of invasion doesn't mean thickness.  So you can have a completely outer -- like an outy tumor, and -- and it's just based by size.  But when it's deeply invasive, it's starting to get into the muscle more than 5 millimeters, you actually upstage it.  So, you know, she technically had a T2 after the pathology was done."<br><br>Mydlarz Dep. Tr. at 26: 6-20. | **Objection: Plaintiffs object to this statement of material fact as the recited testimony is not a statement of fact but rather a statement of opinion offered by Dr. Mydlarz.** |
| 9. Dr. Mydlarz testified : "So it was surprising to see that this was such a deeply invasive tumor, up to 5.7 millimeters. So based on that we talked to her -- or I talked to her about the fact we should do a neck dissection to make sure.  Even though the imaging and the exam doesn't show lymph nodes, the risk of having a cult -- a cult meaning silent metastases or micrometastases to the lymph nodes is greater than 30 percent.  So you usually try to perform a sort of a -- a staging neck dissection to -- to sample the lymph nodes and make sure there are no -- and she -- she did not -- so we did that later, and the pathology did not show any lymph nodes involved, which is a good -- which is a good prognostic sign."<br><br>Mydlarz Dep. Tr. at 31: 12-22; 32: 1-5. | **Objection: Plaintiffs object to this statement of material fact as the recited testimony is not a statement of fact but rather a statement of opinion offered by Dr. Mydlarz.** |
| 10. In answer to the question, "So -- okay.  So the [perineural] PNI was what po- -- what was the reason for the post-operative radiation, and the depth of the invasion was the reason for the neck dissection?  Is that --? Dr. Mydlarz testified " That is correct -- that is correct." | **Not disputed.** |

26

| | |
|---|---|
| Mydlarz Dep. Tr. at 32: 11-16. | |
| 11. Dr. Mydlarz testified that the PNI was likely of a small peripheral branch of the lingual nerve.<br><br>Mydlarz Dep. Tr. at 33: 8-14. | **Objection: Plaintiffs object to this statement of material fact as the recited testimony is not a statement of fact but rather a statement of opinion offered by Dr. Mydlarz.** |
| 12. Dr. Mydlarz testified that as of the date of his deposition, August 24, 2021, that although he could not say to 100% certainty that Ms. Boesen's cancer would not recure, in his opinion "more likely than not" that would not happen."<br><br>Mydlarz Dep. Tr. at 48: 1-8. | **Objection: Plaintiffs object to this statement of material fact as the recited testimony is not a statement of fact but rather a statement of opinion offered by Dr. Mydlarz.** |
| 13. On December 15, 2016, Ms. Boesen returned to see Dr. Brown for a second appointment.<br><br>Ex. A. Brown 12-15-2016 progress note p. BBSCJ000017.001. | **Not disputed.** |
| 14. At the December 15, 2016 appointment Dr. Brown documented in his note that the lesion was a "2 mm by 1 cm area, left lateral border of the tongue, middle third. Minor erythema. All other oral areas within normal limits."<br><br>Brown Dep. Tr. at 95:21-22, 96:1-3. | **Not disputed.** |
| 15. When asked what was different about the lesion he observed on December 15, 2016 Dr. Brown testified that "it was smaller, considerably smaller. It appeared to be in the same location and it was – it showed minor redness, like it would appear to be healing."<br><br>Brown Dep. Tr. at 96: 13-17. | **Not disputed.** |
| 16. Dr. Brown testified that at the December 15, 2016 appointment he said to Ms. Boesen that "the biopsy demonstrated that the lesion was – was an immune reaction or autoimmune reaction and was – was not – was not oral cancer."<br><br>Brown Dep. Tr. at 98: 12-21. | **Not disputed.** |
| 17. Dr. Brown testified that "plaque" means a lesion with well-circumscribed borders."<br><br>Brown Dep. Tr. at 53: 20-21. | **Not disputed.** |

| | |
|---|---|
| 18. At the August 30, 2016 appointment Dr. Brown took a 3 mm punch biopsy of the lesion on Ms. Boesen's tongue.<br><br>Brown Dep. Tr. at 78: 21-22; 79: 1-5. | **Not disputed.** |
| 19. The August 30th punch biopsy of the lesion on Ms. Boesen's tongue was sent to LabCorp for analysis and pathological diagnosis.<br><br>Ex. C. LabCorp Report. | **Not disputed.** |
| 20. The diagnosis written on the report from LabCorp of Ms. Boesen's August 30, 2016 biopsy was<br>Tongue, Lateral Border, Left, Lichenoid Mucositis."<br><br>Ex. C. LabCorp Report. | **Not disputed.** |
| 21. After receiving the pathology report from LabCorp Dr. Brown called Ms. Boesen and advised her of its findings.<br><br>Brown Dep. Tr. at 90: 5-15. | **Not disputed.** |
| 22. The results from the May 17, 2017 biopsy were "In situ invasive squamous cell carcinoma, poorly differentiated."<br><br>Scuibba Dep. Tr. at 32: 19-22; 33: 1-2. | **Not disputed.** |
| 23. Dr. Scuibba referred Ms. Boesen for treatment of her cancer to a head and neck surgeon Wojciech K. Mydlarz, MD.<br><br>Scuibba Dep. Tr. at 38: 14-22. | **Not disputed.** |
| 24. When asked at his deposition if he could "say, to a reasonable degree of dental certainty, that as of August 30th, Ms. Boesen had cancer?" Dr. Bernstein answered "Cancer ? No.  I can't say that by August 30th."<br><br>Bernstein Dep Tr. at 144: 6-10. | **Not disputed.** |
| 25. When asked at his deposition "can you state, to a reasonable degree of dental certainty, that as of August 30th Ms. Boesen had dysplasia?" Dr. Bernstein testified  "I'm going to go with probably.  I -- again, cancers behave the way cancers behave.  But this was an evolving situation, and it, it -- it probably was. I'm -- I -- I don't -- I wish I didn't have to say | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. The testimony of Dr. Bernstein was clear that his opinion was that within a** |

28

| | |
|---|---|
| that, because I don't know. But statistically, it probably did show dysplasia."<br><br>Bernstein Dep Tr. at 144: 11-19. | reasonable degree of medical certainty as of August 30th Mrs. Boesen had dysplasia.<br><br>**Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21** |
| 26. When asked at his deposition "[d]octor, what's the basis for your opinion that there was dysplasia in August -- on August 30th, 2016?" Dr. Bernstein testified "[a]s I mentioned, there are things I can't know. But statistically, these dysplasias – these premalignant lesions evolve. Now, they can take a lot of time, or they can happen in a relatively short time. But I cannot tell you with the certainty that I would have to do in a felony case where you need certainty, I cannot tell you that. I can just say that we do know what, what transpired, and, I will not use the outcome to flavor what Dr. Brown didn't know at the time."<br><br>Bernstein Dep Tr. at 145: 7-19. | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. Dr. Bernstein testified that his opinion was based upon his knowledge, education, and training and furthermore provided medical research to bolster his testimony.**<br><br>**Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21; 30:9 – 31:4 & 45:21 – 49:1** |
| 27. Dr. Bernstein testified, at his deposition, "The science that we know is that dysplasia is somewhat unpredictable. We know that we don't have a crystal ball. We don't have an opportunity to go back and look at that. We just know that a lesion that evolved the way her lesion did evolved the way it actually did. I cannot tell you the moment she had cancer. I can be absolutely sure that just before Dr. Sciubba saw her, she did have cancer. Now we get into that area of when did the cancer occur? This is a game I can't play. I do not have that information. I cannot make up something. I know how other cancers have behaved. I've seen patients have dysplasias. I've seen those dysplasias stay stable for a while. I've seen them evolve. I don't know the answer to that question, and it really -- because of we know what it does, we don't -- it's not a game we play."<br><br>Bernstein Dep Tr. at 147: 18-22; 148 1-11. | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. Dr. Bernstein testified that his opinion was based upon his knowledge, education, and training and furthermore provided medical research to bolster his testimony.**<br><br>**Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21; 30:9 – 31:4 & 45:21 – 49:1** |
| 28. Dr. Bernstein testified, at his deposition, that "dysplasia and cancer evolves from nothing, to hardly detectible, to places where pathologists will disagree, to dysplasia. And | **Not disputed.** |

29

| | |
|---|---|
| then it can either go from dysplasia into cancer, or dysplasia into carcinoma in situ and then cancer, or it can stay as dysplasia for a while. It does what it wants to do when it wants to do it."<br><br>Bernstein Dep Tr. at 146: 8-14. | |
| 29. When asked, at his deposition, "So what is the scientific basis for you saying that in August of 2016, Ms. Boesen had dysplasia? Dr. Bernstein testified "the objective scientific information is by virtue of experience. I don't have an article that can tell me that I'm at the -- she has dysplasia. I don't have a biopsy that tells me she has dysplasia on that date. I just have my opinion that if a biopsy was done on a representative area on that date, it would have shown dysplasia."<br><br>Bernstein Dep Tr. at 149: 15-22; 150: 1-2. | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. Dr. Bernstein testified that his opinion was based upon his knowledge, education, and training and furthermore provided medical research to bolster his testimony.**<br><br>**Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21; 30:9 – 31:4 & 45:21 – 49:1** |
| 30. Dr. Bernstein testified, at his deposition, that the sole basis for his opinion that Ms. Boesen had dysplasia on August 30, 2017, is his "my experience, my education and training."<br><br>Bernstein Dep Tr. at 149: 18-22; 150: 1-7. | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. Dr. Bernstein testified that his opinion was based upon his knowledge, education, and training and furthermore provided medical research to bolster his testimony.**<br><br>**Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21; 30:9 – 31:4 & 45:21 – 49:1** |
| 31. When asked, at his deposition, "Well, specifically, what experience, education or training allows you to render an opinion that there was dysplasia in August of 2016? Dr. Bernstein answered "well, because I've seen cancers evolve from dysplasias. I've seen enough of them to have a, an opinion that can't be vetted in pure science. For the same token, I can't say that a day before Dr. Scuibba's biopsy, I can't say that she didn't have can -- that she -- maybe she didn't have cancer a day before, but that's ridiculous. Okay? So we're | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. Dr. Bernstein testified that his opinion was based upon his knowledge, education, and training and furthermore provided medical research to bolster his testimony.** |

30

| | |
|---|---|
| getting into -- we're getting into something where you're asking me because of lack of absolute scientific proof, that you're preventing me from saying that something is ridiculous. And I just – my opinion has to mean something, because we all, as dentists, treat patients and make the right calls most of the time.<br><br>Bernstein Dep Tr. at 150: 8-20; 151: 1-2. | **Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21; 30:9 – 31:4 & 45:21 – 49:1** |
| 32. When asked, at his deposition, for the basis of his opinion that "had dysplasia or a less invasive carcinoma been diagnosed 5 months earlier [than when it was on May 17, 2017], Ms. Boesen would likely have been able to avoid the neck dissection and radiation and might have needed less tongue surgery;" Dr. Bernstein testified: "Well, cancers grow.  They don't explode.  They grow.  Many cancers have a doubling rate where, you know, once -- there's a few cells, and then a certain number of months go by and then there's a doubling.  And in those months when the cancer is just getting going, it's relatively small, because you double three cells, it becomes six cells.  You still can't see it.  Then it becomes 12 cells.  Still can't see it.  Once it reaches a certain size, that doubling rate starts to have a visible effect.  So whatever that doubling rate was for that cancer we don't know.  And it's not exactly doubling, because some of those cancer cells do die off, but it starts to evolve quickly after a certain point.  And certainly my impression, my opinion is that there was at least dysplasia there by December, and once we get that cancer early, it reaches a certain threshold where if it's a certain thickness of invasion, statistically you don't have to do the neck dissection.  But if it reaches a certain beyond that, it is statistically best to do a lymph node dissection.  And if there's perineural invasion, that adds a little bit to it.<br><br>Bernstein Dep Tr. at 155: 13-22; 156:1-19. | **Plaintiffs dispute this statement in part. Plaintiffs do not dispute that this is the testimony of Dr. Bernstein. Plaintiffs' dispute of this statement pertains to the manner in which the testimony is presented. Specifically, the testimony is incomplete. Dr. Bernstein testified that his opinion was based upon his knowledge, education, and training and furthermore provided medical research to bolster his testimony.**<br><br>**Bernstein Dep. Tr. at 144:11 – 145:6; 149:15 – 151:21; 30:9 – 31:4 & 45:21 – 49:1** |
| 33. When asked, at his deposition, "we can agree you don't know what the doubling rate was for Ms. Boesen's cancer, right;" Dr. Bernstein testified "[t]hat's correct." | **Not disputed.** |

| | |
|---|---|
| Bernstein Dep Tr. at 157: 1-4. | |
| 34. Also, when asked, at his deposition,"[i]s it fair to say squamous cell carcinomas can grow at different rates;" Dr. Bernstein answered, "[y]es, that's fair to say."<br><br>Bernstein Dep Tr. at 163: 18-21. | **Not disputed.** |
| 35. At his deposition, Dr. Bernstien agreed that some squamous cell carcinomas can grow quickly, and some can grow slowly.<br><br>Bernstein Dep. 163: 21-22; 164 1-2. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact. The material facts relevant to this case and this motion is the rate at which Mrs. Boesen's pathology developed.** |
| 36. In answer to a question, at his deposition, about what month he was referring to in his report when he said: "had dysplasia or a less invasive carcinoma been diagnosed 5 months earlier [than when it was on May 17, 2017], Ms. Boesen would likely have been able to avoid the neck dissection and radiation and might have needed less tongue surgery;" Dr. Bernstein testified: "I can't give you the month. But we all know that these cancers start out smaller and grow and become larger.<br><br>Bernstein Dep Tr. at 164: 11-22; 165: 1. | **Plaintiffs object to this statement as it is not relevant and therefor not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |
| 37. When at his deposition, "I understand. I'm just asking you if you can say the specific point in time at which the tumor grew to a size that required neck dissection.;" Dr. Bernstein testified There is no way I can tell you that."<br><br>Bernstein Dep Tr. at 165: 2-5. | **Plaintiffs object to this statement as it is not relevant and therefor not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |
| 38. Dr. Bernstein rendered the following testimony at his deposition:<br>  "Q    I understand. I'm just asking you if you can say the specific point in time at which the tumor grew to a size that required neck dissection.<br><br> A    There is no way I can tell you that.<br><br> Q    Okay. And the same thing would hold true for radiation therapy. They go hand in hand, right? | **Plaintiffs object to this statement as it is not relevant and therefor not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |

32

| | |
|---|---|
| A   Well, you know, I mean, there's a certain limit to what a clinical and microscopic pathologist can tell you.  This is -- this is -- these treatment considerations are the realm and purview of the oral surgeon."<br><br>Bernstein Dep Tr. at 165: 2-12. | |
| 39. When asked, at his deposition, "do you know what the reason was that they decided to do a neck dissection and administer radiology in this case;" Dr, Bernstein Dr. Bernstein testified: "I would imagine it has to do with tumor thickness and with perineural invasion.  That is invasion of the tumor cells around nerves."<br><br>Bernstein Dep Tr. at 162: 7-12. | **Not disputed.** |
| 40. When asked, at his deposition, "[a]nd you said that once the cancer reaches a certain thickness, there needs to be lymph node dissection.  What – What is that thickness;" Dr. Bernstein stated: You know, it's –it's a surgical thing.  In general, some surgeons will say I want to do a neck dissection if it's three millimeters in thickness.   Others will say four millimeters. Others will say five.  Well, I think we can get away with five millimeters.  So it's a range of about three to five millimeters in thickness of the -- in thickness of invasion."<br><br>Bernstein Dep Tr. at 157: 5-7. | **Not disputed.** |
| 41. When asked at his deposition "do you know when there was a tumor- when the tumor became three millimeters thick:" Dr. Bernstein testified "no."<br><br>Bernstein Dep Tr. at 162: 3-6. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |
| 42. When asked at his deposition: "Okay. Doctor, do you know when it was that the tumor came into contact with that nerve to cause perineural invasion?: Dr. Bernstein testified " No.  Apparently the patient started to have some symptoms that was attributable to the perineural invasion. No, I don't have that information.<br><br>Bernstein Dep Tr. at 163: 11-17. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |

33

| | |
|---|---|
| 43. When asked at his deposition "Do you -- I forgot to ask this about your background, but do you perform or are you trained to perform glossectomies?"; Dr. Bernstein testified "No. No."<br><br>Bernstein Dep Tr. at 95: 14-19. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |
| 44. When asked at his deposition "[o]kay. Do you perform radiation --;" Dr. Bernstein testified "No."<br><br>Bernstein Dep Tr. at 95: 20-22. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |
| 45. Dr. Bernstein rendered the following testimony at his deposition:<br><br>"Q    Okay. And as I understood you, with regard to the neck dissection and when that's indicated,<br>that's a surgeon -- you said that was a surgeon – the surgeons make that ultimate decision, right?<br><br>A    Or somebody who knows about the specifics of her care, yes.<br><br>Q    Right. Okay. So, and that somebody's not you in this particular case, right?<br><br>A    That's right."<br><br>Bernstein Dep Tr. at 170: 21-22; 171: 1-7. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact. Plaintiffs further object under (cite case law from motion on specificity).** |
| 46. Dr. Bernstein stated in his deposition that the standard of care required a biopsy be taken on December 15, 2016.<br><br>Bernstein Dep Tr. at 120: 3-15. | **Plaintiffs do not dispute this statement; however, Plaintiffs offer their counter-statement of material facts for completeness.** |
| 47. Dr. Bernstein stated in his report "It is within a reasonable degree of probability that a premalignant condition (dysplasia) or superficial carcinoma was present at the time that Dr. Brown did his biopsy.<br><br>Ex. J Dr. Bernstein Report. p. 3. | **Not disputed.** |
| 48. Dr. Bernstein stated in his report "In my opinion, within a reasonable degree of medical probability, had Dr. Brown's initial biopsy shown the true nature of the disease, excisional | **Not disputed.** |

| | |
|---|---|
| surgery could have been performed 5 months earlier, preventing the need for neck dissection and radiation.<br><br>Ex. J Dr. Bernstein Report. p. 3. | |
| 49. Dr. Bernstein stated in his report: "Had dysplasia or a less invasive carcinoma been diagnosed 5 months earlier, Ms. Boesen would likely have been able to avoid the neck dissection and radiation and might have needed less tongue surgery."<br><br>Ex. J Dr. Bernstein Report. p. 3. | **Not disputed.** |
| 50. Dr. Bernstein stated in his report "it is my opinion, within a reasonable degree of medical probability, that there was a misstep by Dr. Brown, resulting a consequential delay in diagnosis."<br><br>Ex. J Dr. Bernstein Report. p. 3. | **Not disputed.** |
| 51. Dr. Bernstein stated in his report "I reviewed the biopsy and agree with the interpretation of the slide. However, the biopsy of a white area, as sent to LabCorps, was most likely not representative of the condition. It failed to disclose the true nature of the disease, thereby bolstering a clinical misdiagnosis of lichen planus that persisted for the duration of Ms Boesen's treatment by Dr. Brown."<br><br>Ex. J Dr. Bernstein Report. p. 3. | **Not disputed.** |
| 52. Dr. Bernstein stated in his report "The lesion continued to evolve unabated for five months, while it became firm."<br><br>Ex. J Dr. Bernstein Report. p. 3. | **Not disputed.** |
| 53. On February 7, 2017 Ms. Boesen called Dr. Brown's office and scheduled a follow-up appointment with Dr. Brown on February 19, 2017.<br><br>Boesen Dep. Tr. 159: 17-22; 160: 1-6. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact.** |

35

| | |
|---|---|
| 54. Ms. Boesen cancelled her follow-up appointment with Dr. Brown that was scheduled for February 19, 2017.<br><br>Boesen Dep. Tr. at 160:1-6. | **Plaintiffs object to this statement as it is not relevant and therefore not a statement of material fact.** |
| 55. At the August 30, 2016 Dr. Brown documented that Ms. Boesen an area of "whitish plaque approximately 4 cm by 1 cm of the left lateral/ventral border of the posterior third of the tongue. All other oral tissue within normal limits."<br><br>Brown Dep. Tr. 76:10-22. | **Not disputed.** |

Respectfully submitted,

/s/Matthew A. Nace
Barry J. Nace, Esq. #130724
Matthew A. Nace, Esq. #1011968
Paulson & Nace, PLLC
1025 Thomas Jefferson St., NW
Ste 810
Washington, DC 20007
bjn@paulsonandnace.com
man@paulsonandnace.com
202-463-1999 Tel.
202-223-6824 Fax
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of November, 2021, a true copy of the foregoing *Response to Statement of Material Facts* was filed via the Court's ECF system to:

Edwin L. Keating, III, Esq.
Baxter, Baker, Sidle, Conn & Jones, P.A.
120 East Baltimore Street
Suite 2100
Baltimore, MD  21202
Phone: (410) 230-3800
Fax: (410) 230-3801
Email Address: elk@bbsclaw.com
*Attorney For: Dr. Brown*

                        /s/Matthew A. Nace
                        Matthew A. Nace, Esq.